■ SAWYER SAVINGS BANK, Formerly Known as SAUGERTIES SAVINGS BANK, Plaintiff, v FRED KENT et al., Defendants, CHASE MANHATTAN BANK, N. A., Respondent, and SELMA KENT, Appellant. [600 NYS2d 807] —Mahoney, J. Appeal from an order of the County Court of Ulster County (Vogt, J.), entered November 16, 1992, which granted defendant Chase Manhattan Bank, N.A.'s application for surplus moneys in a mortgage foreclosure action.

At issue in this appeal is the priority between a mortgagee and a judgment lien creditor to the surplus moneys arising from a foreclosure sale. A review of the record establishes that during the 1970s and 1980s, defendant Fred Kent acquired title to three tracts of land in the Town of Woodstock, Ulster County, that were 45 acres, 35 acres and 23 acres. Plaintiff held a first mortgage on the 45-acre and 35-acre tracts. Between 1980 and 1982, defendant Chase Manhattan Bank, N.A. (hereinafter Chase) loaned a total of $550,000 to Kent individually and to 10 of Kent's corporations for which Kent was a guarantor. Of the $550,000 in loans, $100,000 was secured by a second mortgage on the 45-acre and 35-acre tracts recorded in 1982. In 1984 Kent's mother, defendant Selma Kent (hereinafter defendant), obtained a $408,060 judgment by confession against him which was docketed as a third lien against the 45-acre and 35-acre tracts.

Thereafter, Kent and his corporations experienced financial difficulties and by 1988 had defaulted on the Chase loans. As a result Chase commenced legal action against them to collect payment. During pendency of the action, Kent and Chase entered into a loan workout agreement. The agreement, which

spelled out the particulars of a debt restructuring plan and provided for Chase's discontinuance of its action "without prejudice" for as long as Kent complied with the restructured payment terms, was *expressly* conditioned upon Kent granting Chase a mortgage on all three tracts as additional security for the guaranteed loans (which at the time totaled $458,132.62 inclusive of interest) and his obtaining an unconditional subordination of defendant's $408,060 judgment lien to the newly created Chase mortgage. The agreement further stated that "[n]on-payment by [Kent] as the same comes due under Paragraph '4' herein shall terminate this Agreement as well as [Chase's] obligation to discontinue its actions for collection". Defendant agreed to subordinate her lien and on May 9, 1988 executed a subordination agreement. The document expressly provided that it was "a continuing irrevocable agreement and shall remain in full force and effect until all of [Chase's] said claims shall have been paid in full". Thereafter, Kent executed the mortgage and the parties signed the workout agreement. The mortgage was recorded on June 1, 1988. By July 1989, Kent and his corporations had fallen into default under the workout agreement and Chase notified Kent that as a result, the agreement had, by its terms, become null and void.

Around this time, Kent had also defaulted on plaintiff's mortgage, thus prompting it to commence the instant action to foreclose. Chase, defendant and Kent were among those named as party defendants. During pendency of this action, Kent moved to discharge Chase's 1988 mortgage as well as the subordination agreement on the theory that Chase's July 1989 letter declaring the workout agreement to be null and void amounted to a rescission with the result that the mortgage and subordination agreement were no longer of any legal effect. Supreme Court rejected this argument and denied the motion.

Ultimately, plaintiff obtained a judgment of foreclosure and the property was sold. After satisfaction of plaintiff's mortgage there remained a $299,408.30 surplus. Both Chase and defendant filed claims to the surplus money. Thereafter, Chase applied to have the surplus moneys awarded to it, arguing that its $100,000 1982 mortgage was senior to defendant's 1984 lien because it was prior in time and that its 1988 mortgage was senior to defendant's lien by virtue of the subordination agreement. Defendant opposed, arguing, as Kent did in his earlier motion, that Chase's declaration of a default under the workout agreement discharged the subordination agreement. Supreme Court denied the motion, conclud-

ing that because defendant was a party to plaintiff's foreclosure action wherein Kent's earlier motion had been made, its decision on that motion constituted the law of the case. Defendant appeals.

There must be an affirmance. On appeal, defendant urges principally that the subordination agreement is unenforceable for failure of consideration and nonperformance of a condition precedent. We disagree. The basis of both contentions lies in the preamble to the subordination agreement, which recites that it is given by defendant to "induce [Chase] to discontinue [its] lawsuit * * * [against Kent] * * * upon such terms and conditions as [Kent] and [Chase] may from time to time agree". Defendant argues that this language required Chase to execute a formal stipulation of discontinuance as an express condition precedent to the effectiveness of the subordination agreement and that the promise of discontinuance furnished the consideration for defendant's agreement to subordinate her lien. While, clearly, Chase's agreement to cease prosecuting its collection claim against Kent furnished the consideration for defendant's execution of the subordination agreement, there is no support in the language of the document for the proposition that Chase's forbearance had to be formally memorialized in a stipulation of discontinuance. Moreover, the workout agreement, which constitutes a "terms and conditions" agreement within the meaning of the above-quoted language, unambiguously defines Chase's obligation only as requiring it to cease prosecution without prejudice to resumption upon default.

Nor do we believe that Chase's July 1989 letter, which operated as a declaration that the workout agreement was in default, somehow discharged the subordination agreement. The obvious import of the unambiguous language contained in the workout agreement is that the mortgage and subordination agreement were given in consideration for Chase's forbearance in pursuing its legal remedies to collect the delinquent debt from Kent, that they were to act as security for payment in the event of Kent's default under the more lenient restructured payment schedule, and that upon default they would remain valid and enforceable mechanisms by which Chase could recover its money. Indeed, to adopt defendant's interpretation that the security dissolved upon default not only essentially vitiates the consideration for Chase's promises, because there is little or no value to a security interest that exists only for the period the loan is not in default and defeats the entire purpose for which the mortgage and subor-

dination agreement were created, but is contrary to the express terms of those documents. The mortgage recites that it stands as security for payment under the workout agreement and provides for the remedy of foreclosure in the event of default thereunder, thus clearly contemplating enforcement and foreclosure, not discharge, in the event of default. The subordination agreement is explicitly made continuing and irrevocable until all of Chase's claims are paid in full, again contemplating survival after default.

It thus being clear that the 1988 mortgage and subordination agreement remained in full force and effect following Kent's default under the workout agreement, Supreme Court properly determined that the 1988 mortgage had priority over defendant's judgment lien.

Weiss, P. J., Levine, Crew III and Casey, JJ., concur. Ordered that the order is affirmed, with costs.